UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVID BROWN,

            Plaintiff,                          Case No. 1:16-cv-235

v.                                                  Honorable Robert Holmes Bell

WILLIE SMITH et al.,

            Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint (ECF No. 8) for failure to state a claim against Defendants Peterson and Paletta.[1] The Court will serve the complaint against Defendants W. Smith, E. Smith, J. Gardner, R. Gorman, P. Jensen, M.

---

[1] It is apparent from Plaintiff's allegations that he intends to name Attorney Teresa Paletta as a Defendant even though he spells the last name Palettea.

Turner, J. LeBarre, R. Gerlach, J. Novak, E. Huss, S. Campbell, T. Doyle, T. Lambert, K. Stevens, A. Platte, J. Fidler, (unknown) Erickson, G. Collins, (unknown) McQueary, J. Paski, D. Gonzales, (unknown) Anderson, (unknown) Beecher, (unknown) Lindsey, and (unknown) Shroad.[2]

## Discussion

I.   Factual allegations

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC). Plaintiff is presently housed at the Carson City Correctional Facility (DRF) in Carson City, Michigan. Some of the events that form the basis for his complaint transpired during his tenure at DRF. Others occurred while Plaintiff was housed at the Ionia Correctional Facility (ICF) in Ionia, Michigan.

In his complaint, Plaintiff sues several MDOC employees at ICF: Warden Willie Smith; Deputy Warden Erica Huss; Residential Unit Manager Eric Smith; Corrections Officers J. Gardner, R. Gorman, and P. Jensen; Prison Counselor Marcus Turner; Nurse Jody LaBarre; Dr. Roger Gerlach; and Librarian Joseph Novak. Plaintiff also sues several MDOC employees at DRF: Warden Sherman Campbell; Litigation Coordinator Daniel Gonzales; Residential Unit Manager (unknown) Anderson; Assistant Residential Unit Supervisors (unknown) Beecher and (unknown) McQueary; Doctor (unknown) Doyle; Health Unit Manager T. Lambert; Nurse K. Stevens; Library Technician A. Platte; Sergeants (unknown) Fidler, (unknown) Collins, and (unknown) Erickson; and Corrections Officer J. Paski. Plaintiff sues Doctor Lindsey from the Duane L. Waters Hospital in Jackson, Michigan. Plaintiff also sues two unknown parties: Unknown Party 1, described as the

---

[2]The listing of defendants in Plaintiff's amended complaint includes reference to Sergeant Shoand. The body of the complaint refers to a Defendant Sergeant Shoard. It appears that Plaintiff intends to sue Sergeant Shroad. That is how the Defendant shall be referenced herein.

onsite optometrist at ICF; and Unknown Party 2, described as the Chief Medical Officer for Corizon Healthcare. Finally, Plaintiff sues Attorneys Kevin Peterson and Teresa Palettea from the Legal Writer Program.

Plaintiff's complaint fails to comply with the mandate of Federal Rule of Civil Procedure 8 in that it is not a "short and plain statement of the claim . . . ." FED. R. CIV. P. 8(a)(2). In a rambling discourse spanning more than five years and twenty-eight pages Plaintiff abandons the convention of normal chronology, indiscriminately jumping from one claim to another. Despite these pleading deficiencies, Plaintiff's complaint succeeds in communicating the core of his claims: that the Defendants have violated federal law or Plaintiff's constitutional rights by failing to treat or accommodate several serious eye conditions that plague him: keratoconus, cataracts, photophobia, and glaucoma.[3]

Plaintiff does not allege that he was denied treatment for his eye conditions; instead, read liberally, his complaint alleges that the treatment was so inadequate that it might as well have been no treatment. According to Plaintiff, the health-care-provider Defendants simply would not follow the recommendations by outside specialists with regard to a particular type of contact lens or corrective surgery. Ultimately, the treatments employed, principally lenses that plaintiff contends were inappropriate, permitted and perhaps caused additional eye problems. Similarly, but perhaps of lesser significance, Plaintiff indicates the solar shields offered by Defendants to ameliorate the effects of his photophobia were not always available and were significantly inferior to sunglasses Plaintiff obtained on his own.

---

[3] This is not the first time Plaintiff has raised these claims in this Court. In *Brown v. Prelesnik*, No. 1:12-cv-873, Plaintiff filed a complaint raising similar claims against some of the same Defendants. In that case, at least some of Plaintiff's claims have survived initial screening and two rounds of summary judgment motions. The Court has appointed counsel for Plaintiff and a status conference is set for June 28, 2016.

Plaintiff also alleges shortcomings in the Defendants' accommodations of his disability. In some respects Plaintiff contends they did not accommodate him at all. Plaintiff notes that the shower was a particular hazard for him. Despite his legal blindness, Plaintiff was compelled to shower with groups of other prisoners. There were no ramps, no safety rails, no handicap chairs, and no floor mats. Plaintiff complains that Defendants at both ICF and DRF denied him the use of a cane, requiring him instead to use other prisoners as guides. Plaintiff states the other prisoners were not always known to him and presented risks to his health and safety. Plaintiff also complains that Defendants purposely and knowingly housed him with other inmates that posed a substantial risk of injury to Plaintiff. Plaintiff further claims he was injured as a result.

Plaintiff claims that Defendants violated his First Amendment right of access to the courts, first at ICF and then at DRF, when they refused to permit him to use the legal writer program, a program available to him because of his blindness. Plaintiff alleges the Defendants' refusals as well as other harms occasioned by Defendants were retaliatory for his filing of *Brown v. Prelesnik*, No. 1:12-cv-873. Additionally, at DRF, Plaintiff claims that Defendants would not let him wear sunglasses in the law library to protect himself from the headaches caused by his photophobia. Plaintiff alleges that refusing him sunglasses in the law library effectively denied him access to the courts.

Plaintiff also raises claims unrelated to his eye conditions. Plaintiff alleges that Defendants Shroad, Gorman, and Gardner were deliberately indifferent to Plaintiff's serious medical need arising from not eating for an extended period of time; that Defendants Huss, and Jensen deprived Plaintiff of showers and yard and beat him or directed that others beat him with no justification.

Plaintiff contends that the actions (or inaction) of the Defendants violated his rights under the First, Eighth, Thirteenth, Fourteenth and Fifteenth Amendments as well as his rights under the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Rehabilitation Act.

## II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal

claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiffs allegations suffice to state a First Amendment claim for denial of access to the courts against all Defendants accused of such conduct except Defendants Peterson and Paletta. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med.*

*Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that even constitutionally required, appointed defense counsel performs a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted). The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender. *Id.* at 321. The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. The Court held that, even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather, defense counsel—whether privately retained or paid by the state—acts purely on behalf of the client and free from state control. *Id*. The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions. *See, e.g., Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cnty. Pub.*

*Defender*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003).

Plaintiff is not constitutionally entitled to the appointment of counsel to represent him in presenting claims usder 42 U.S.C. § 1983. The state's obligation therefore is far less than that required on direct criminal appeal. As a consequence, if the payment for constitutionally required legal assistance fails to create state action, the mere payment of an attorney to oversee the provision of minimal assistance to those incapable of litigating their own claims necessarily fails as well. Plaintiff's claims against Defendants Peterson and Paletta are properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Peterson and Paletta will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants W. Smith, E. Smith, J. Gardner, R. Gorman, P. Jensen, M. Turner, J. LeBarre, R. Gerlach, J. Novak, E. Huss, S. Campbell, T. Doyle, T. Lambert, K. Stevens, A. Platte, J. Fidler, (unknown) Erickson, G. Collins, (unknown) McQueary, J. Paski, D. Gonzales, (unknown) Anderson, (unknown) Beecher, (unknown) Lindsey, and (unknown) Shroad.

An Order consistent with this Opinion will be entered.

Dated: <u>October 31, 2016</u>     <u>/s/ Robert Holmes Bell</u>
                                                              ROBERT HOLMES BELL
                                                              UNITED STATES DISTRICT JUDGE