UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVIS BROWN,

        Plaintiff,

v.

WILLIE SMITH, *et al.*,

        Defendants.

                               /

Case No. 1:16-cv-235

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. The Court's case management order (CMO) (ECF No. 37) required that all discovery be completed by May 30, 2017, and all motions for summary judgment be filed by June 27, 2017. The parties inundated the Court with motions, including requests for extensions of time, which resulted in the Court ordering on June 26, 2017, that all discovery and motion deadlines in the CMO were to be stayed until the pending motions (ECF Nos. 38, 50, 55, 58, 60, 65, 72, and 74) were resolved and that defendant Dr. Gerlach could file a dispositive motion 90 days after the Court decided his motion to dismiss (ECF No. 74). *See* Order (ECF No. 77). The intent of that order was to cease all further discovery and motion practice in the case until the Court could resolve the outstanding motions. On the same date that the Court entered this order, Dr. Chad Linsley[1] filed a motion for summary judgment (ECF No. 79).

---

[1] Based on the filings in this case, it appears to the Court that defendant "Dr. Lindsey" is correctly identified as "Dr. Chad Linsley."

Upon further review, the Court determined that this case was unmanageable in its present form, and severed all claims except the Eighth Amendment deliberate indifference claims alleged against three doctors, i.e., Dr. Doyle, Dr. Gerlach, and Dr. Linsley. *See* Order (ECF No. 84). Plaintiff has a medical condition known as keratoconus, which he alleged is a corneal degenerative disease which causes blindness. Amend. Compl. (ECF No. 8, PageID.77). Plaintiff also alleged that he is "completely blind in the left eye, and partially blind in the right." *Id*. The Court identified seven claims alleged against these three defendants related to this condition:

> [P]laintiff's allegations involve Eighth Amendment claims for deliberate indifference to serious medical needs as follows: (1) prior to 2016, Dr. Gerlach failed to prescribe a cane; (2) in February, March and April 2016, Dr. Doyle failed to prescribe a cane; (3) in 2012, Dr. Gerlach obstructed or prevented recommended cornea surgery (4) in 2012, Dr. Gerlach failed to provide plaintiff with appropriate contact lenses; (5) in 2010, 2013 and 2015, Dr. Doyle and Dr. Lindsey failed to provide plaintiff with appropriate contact lenses which caused swelling of his cornea; (6) on July 13, 2016, Dr. Lindsey told plaintiff that he would be receiving contact lenses but plaintiff did not receive the lenses; and, (7) from March 2015 through sometime in 2016, Dr. Doyle denied or failed to provide plaintiff with prescription sunglasses.

Order (ECF No. 84, PageID.702-703). This order severing claims resulted in the dismissal without prejudice of five motions (ECF Nos. 38, 50, 58, 65, and 72), leaving three motions for decision: Dr. Doyle's motion for summary judgment (ECF No. 55); Dr. Gerlach's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 74); and Dr. Linsley's motion for summary judgment (ECF no. 79). *Id*. [2]

---

[2] The Court has entered a separate order denying three motions which the parties filed contrary to the stay: Dr. Gerlach's motion for summary judgment (ECF No. 92); plaintiff's motion to compel (ECF No. 104); and Dr. Linsley's motion for summary judgment (ECF No. 112).

### II. Dr. Gerlach's motion to dismiss

### A. Statute of limitations

Dr. Gerlach contends that plaintiff's claims against him are barred by the statute of limitations and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). "A complaint is subject to dismissal without any further proof if 'the allegations . . . show that relief is barred by the applicable statute of limitations.'" *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012), quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007).

> Although an affirmative defense is generally not the proper subject of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.1998) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994)); *see also Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 775 n. 3 (5th Cir.1997) (stating that "certain affirmative defenses that clearly appear on the face of the plaintiff's complaint—most commonly that the statute of limitations has run—may properly be asserted in a Rule 12(b)(6) motion"). The Sixth Circuit adheres to this rule as well. *See Pierce v. Oakland Cnty.*, 652 F.2d 671, 672 (6th Cir.1981) (holding that an affirmative defense is not waived even if not pled where it appears on the face of the complaint and is asserted by the defendant in a Rule 12(b)(6) motion to dismiss).

*Patton v. Village of Cassopolis*, No. 1:13-cv-124, 2013 WL 3929989 at *1 (W.D. Mich. July 29, 2013).

The statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10). *Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004). The statute of limitations which applies to a prisoner's § 1983 civil rights action is tolled for the period during which the prisoner exhausts his state administrative remedies. *See Waters v. Evans*, 105 Fed. Appx. 827, 829 (6th Cir. 2004).

3

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) (emphasis added). This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to [the prisoner's] civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

Here, Dr. Gerlach's motion to dismiss should be denied because the statute of limitations defense is not clear from the face of the complaint. First, plaintiff did not allege specific dates when these actions occurred. Second, the Court does not accept Dr. Gerlach's conclusion that plaintiff's statute of limitations is tolled by a maximum of 150 days, which the doctor explains as "the maximum amount of time the MDOC policy allowed for the completion of the grievance process through Step III, including extensions . . . (120 days plus two 15-day extensions)." Gerlach Brief (ECF No. 74, PageID.638). This tolling argument has been rejected "because it is contrary to sound policy: if a grievance did not toll the limitations clock during the entire grievance process, the prison, upon receiving a grievance could, through its own dilatory practices, wait out the limitations period." *See, e.g.*, *Davis v. Straub*, No. CIV.A. 10-14397, 2011 WL 2433398 at *7 (E.D. Mich. May 10, 2011), R&R adopted, No. 10-14397, 2011 WL 2415357 (E.D. Mich. June 13, 2011) (prisoner's statute of limitations should be tolled from the date the prisoner completed the Step I grievance form until the dated the MDOC approved the Step III grievance response, which in that case was 316 days). Given the tolling language in *Brown* ("the statute of limitations which applied to [the prisoner's] civil rights action was tolled for the period during which his available state remedies were being exhausted") and the policy considerations recognized in *Davis*,

4

the undersigned concludes that the cause of action should be tolled during the actual time that it took for plaintiff to complete the grievance process, i.e., the date plaintiff submitted the Step I grievance form until the date the MDOC approved the Step III appeal. The relevant facts to determine tolling are not before the Court. Accordingly, Dr. Gerlach's motion to dismiss should be denied with respect to the statute of limitations defense.

### B. Failure to state a claim

As discussed, the Court identified three claims against Dr. Gerlach: prior to 2016, Dr. Gerlach failed to prescribe a cane; in 2012, Dr. Gerlach obstructed or prevented recommended cornea surgery; and, in 2012, Dr. Gerlach failed to provide plaintiff with appropriate contact lenses. Dr. Gerlach seeks to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6),

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

5

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008). Finally, *pro se* complaints, like the one filed in this case, "are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted).

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The pleading requirements for a deliberate indifference claim were set forth in *Finley v. Huss*, -- Fed. Appx. --, 2018 WL 557837 (6th Cir. Jan. 25, 2018):

> A deliberate-indifference claim has three elements. First, the prisoner must plead facts showing that his ailment was sufficiently serious to warrant constitutional concern. *Bays v. Montmorency Cty.*, 874 F.3d 264, 268 (6th Cir. 2017). Second, he must show that the official in question was subjectively aware of facts "from which the inference could be drawn that a substantial risk of serious harm exist[ed]." *Id.* Third, he must plead that the official, in fact, drew that inference, but disregarded the risk anyway. *Id.*

*Finley*, 2018 WL 557837 at *3.

### 1.  Dr. Gerlach failed to prescribe a walking cane

First, plaintiff alleged that sometime prior to 2016, Dr. Gerlach failed to prescribe him a walking cane. Plaintiff claims that "despite numerous request [sic] from plaintiff to Dr. Gurlach [sic] to provide plaintiff a walking cane so plaintiff could navigate own [sic] his own pace, Gurlach fail [sic] to accommodate," and that "Gurlach action [sic] are deliberate indifference to plaintiff serious medical need." Amend. Compl. at PageID.78. For purposes of this motion, the Court must accept as true plaintiff's allegations: that he is "completely blind in the left eye, and

7

partially blind in the right;" that Dr. Gerlach was aware of this condition; that plaintiff had trouble keeping up "stride for stride" with the prisoners assigned to assist him; that the prisoners assigned to assist plaintiff "would often leave plaintiff in the corner" until they were through playing sports"; and, that the doctor failed to prescribe a cane to plaintiff so that he could navigate at his own pace.

Plaintiff has not alleged sufficient facts to state a claim for relief against Dr. Gerlach for deliberate indifference to a serious medical need. In his amended complaint, plaintiff acknowledged that his eye condition was being accommodated by other prisoners who were assigned to assist him. While plaintiff also wants a cane so that he can navigate at his own pace, the failure to provide him a cane in addition to the inmate assistants does not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Burnett v. Wilson*, No. 1:06-cv-2621, 2007 WL 437921 at *3-5 (N.D. Ohio Feb. 7, 2007). At most, plaintiff has alleged that he had a difference of opinion with Dr. Gerlach as to whether he needed a walking cane in addition to the inmate assistants. Plaintiff's disagreement with Dr. Gerlach's medical judgment regarding a cane does not rise to the level of a federal constitutional claim. *See Woodberry v. Simmons*, 146 Fed. Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"). Accordingly, plaintiff's claim that Dr. Gerlach denied him a walking cane should be dismissed.

### 2. Dr. Gerlach failed to provide plaintiff with appropriate contact lenses and obstructed or prevented recommended cornea surgery

Plaintiff alleged that Dr. Gerlach and former defendant Lebarre told plaintiff that there was no such contact lens called the "prose lens" and that Dr. Gerlach conspired with others "to deny purchasing the prose contact lens as a means to save cost and stall outb [sic] for cornea surgery, contrary to two cornea specialist orders." Amend. Compl. at PageID.85.[3] Plaintiff further alleged that Dr. Gerlach, former defendant Lebarre and "John Doe" (from Corizon Health) knew that the delay from purchasing the prose contact lens would cause plaintiff further deterioration of the cornea and swelling, and that plaintiff contracted an eye infection during this delay of treatment which resulted in him "having to be sent back to Kellogg eye center again." *Id.* at PageID.86. Dr. Gerlach contends that plaintiff's claim involves nothing more than a disagreement regarding a prescription for "prose contact lenses." The Court, however, concludes that plaintiff has alleged a more complex situation, i.e., that Dr. Gerlach's intentional delay in prescribing prose contact lenses caused a delay in treatment which resulted in both an eye infection and corneal deterioration. Based on these allegations, which the Court must accept as true, the Court concludes that plaintiff has alleged a cause of action for deliberate indifference against Dr. Gerlach. Accordingly, Dr. Gerlach's motion to dismiss should be denied with respect to these claims.

---

[3] "PROSE is a transparent dome, filled with a sterile saline solution that serves as an artificial tear reservoir, providing constant lubrication to the eye, and allowing oxygen to reach the cornea. The device, about the size of a nickel and composed of gas permeable material, creates a smooth surface over the damaged cornea." *See* http://www.umkelloggeye.org/conditions-treatments/prose .

### III. Motions for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.  Dr. Doyle

Dr. Doyle has moved for summary judgment due to lack of exhaustion. The doctor has relied on the motion and brief filed by the former MDOC defendants (ECF Nos. 38 and 39).

#### 1.  Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2.  MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a

11

problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Dr. Doyle's motion for summary judgment is deficient. While the MDOC defendants filed copies of over 200 pages of the grievances relevant to plaintiff's claims against them, *see* Exhibits (ECF Nos. 39-1, 39-2, 39-3, 39-4, 39-5, and 39-6), their motion does not address whether plaintiff exhausted any grievances against Dr. Doyle. For his part, Dr. Doyle makes no attempt to sort out which grievances may apply to him. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Accordingly, Dr. Doyle's motion for summary judgment (ECF No. 55) should be denied without prejudice.

### C. Dr. Linsley

Dr. Linsley has raised two issues on summary judgment. First, Dr. Linsley seeks summary judgment for lack of exhaustion, stating that he "adopts and incorporates by reference the arguments set forth in the Brief in Support of M.D.O.C. Defendants' Motion for Summary Judgment (R.39)." Dr. Linsley Brief (ECF No. 80, PageID.669). This cryptic argument is deficient for the same reasons as the argument advanced by Dr. Doyle. Accordingly, Dr. Linsley's motion should be denied to the extent he seeks summary judgment for lack of exhaustion.

Second, Dr. Linsley contends that he is entitled to summary judgment on the merits of plaintiff's Eighth Amendment claims. As an initial matter, although Dr. Linsley has styled his motion as one for summary judgment, he does not present any evidence to support his claim as contemplated by Fed. R. Civ. P. 56. Rather, Dr. Linsley is effectively moving to dismiss plaintiff's claims as legally deficient. Accordingly, the Court will address Linsley's motion as one to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

As discussed, plaintiff's amended complaint alleged that in 2010, 2013 and 2015, Dr. Doyle and Dr. Linsley failed to provide plaintiff with appropriate contact lenses which caused swelling of his cornea, and that on July 13, 2016, Dr. Linsley told plaintiff that he would be receiving contact lenses but plaintiff did not receive the lenses. Plaintiff's claims against Dr. Linsley can be distilled into two incidents. The first incident occurred in 2015 when plaintiff was sent to "Dw" or "Dwh" [Duane Waters Hospital] eye clinic. According to plaintiff, DWH optometrist Dr. Linsley knew through reading plaintiff's optometry chart that on April 25, 2013 Dr. Lavery of TLC eye clinic had refused to perform cornea surgery on plaintiff because Lavery

"felt that cornea transplant would harm plaintiff do [sic] to prison setting if plaintiff body [sic] rejected the transplant or plaintiff caught eye infection rescheduling would be to [sic] hard before irreparable damage would be done"; that Dr. Linsley tried to fit plaintiff with "gas perm lenses"; that these lenses caused plaintiff "swelling on the cornea;" and that plaintiff returned the lenses to a nurse at the DRF dispensary window and either the nurse or plaintiff (it is unclear from the pleading) informed Dr. Doyle and former defendants Lambart and Stevens that plaintiff had turned in the contact lenses." Amend. Compl. at PageID.87-88.

The second incident occurred in 2016 and arose from the following facts. Plaintiff was referred to a specialist who performed testing and decided that a cornea transplant would be harmful to plaintiff. *Id.* at PageID.88. The specialist informed former defendants Lambart, Stevens and Bordering that he could design a lens call the "prose" and that this lens would greatly improve plaintiff's vision and provide comfort. *Id.* However, the MDOC decided not to purchase this lens. *Id*. After several months elapsed, during which plaintiff complained that he was suffering pain and blurred vision, plaintiff was sent back to DWH, where he was seen by Dr. Linsley. *Id*. After reviewing plaintiff's file, Dr. Linsley informed former defendants Lambart and Stevens that he could not duplicate the prose lens. *Id*. Plaintiff suffered a slip and fall because he could not see well enough without the contact lenses. *Id*. at PageID.88-89. Finally, plaintiff alleged that he was seen by Dr. Linsley on July 13, 2016 (about four months after the lawsuit was filed), who informed plaintiff that he "would be reciving [sic] contact lenses but to no avai [sic]." *Id*. at PageID.89.

With respect to the 2015 incident, the gist of plaintiff's claim is that Dr. Linsley provided inadequate medical care, i.e., the doctor fitted plaintiff with gas permeable contact lenses and that plaintiff returned the lenses because plaintiff said they caused corneal swelling. This

14

claim does not rise to the level of an Eighth Amendment violation.. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004), quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

Finally, the gist of plaintiff's 2016 claim against Dr. Linsley is that the doctor could not duplicate or provide prose contact lenses. This claim does not rise to the level of either an Eighth Amendment claim or inadequate medical treatment. Plaintiff's claim against the doctor appears to be nothing more than an accusation that "the - defendant - unlawfully - harmed – me" which is insufficient to state a cause of action. *See Iqbal*, 556 U.S. at 678. Accordingly, Dr. Linsley's motion for summary judgment (ECF No. 79) should be granted.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that Dr. Gerlach's motion to dismiss (ECF No. 74) be **GRANTED** with respect to plaintiff's claim that the doctor failed to prescribe a cane and **DENIED** in all other respects.

I further recommend that Dr. Doyle's motion for summary judgment (ECF No. 55) be **DENIED**.

I further recommend that Dr. Linsley's motion for summary judgment (ECF No. 79) be **GRANTED** and that he be dismissed from this action.

I further recommend that the Court enter an amended case management order setting forth deadlines for discovery and dispositive motions on the remaining claims against Dr. Gerlach and Dr. Doyle.

Dated:  February 23, 2018                                   /s/ Ray Kent
                                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).