UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BROWN,

    Plaintiff,

v.

WILLIE SMITH, *et al.*,

    Defendants.
_____/

Case No. 1:16-cv-235

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. All defendants have been dismissed except for physician Roger Gerlach, M.D. and optometrist Thomas Doyle, O.D. This matter is now before the Court on motions for summary judgment filed by defendants Dr. Gerlach (ECF No. 122) and Dr. Doyle (ECF No. 127).

Plaintiff alleged that he has a medical condition known as keratoconus which has left him "completely blind in the left eye, and partially blind in the right." Amend. Compl. (ECF No. 8, PageID.77). In his amended complaint, plaintiff alleged that numerous defendants failed to treat or accommodate his condition. Ultimately, the Court severed all claims from this lawsuit except the Eighth Amendment deliberate indifference claims alleged against medical providers Dr. Gerlach, Dr. Doyle, and Dr. Linsley (identified on the docket sheet as Dr. "Lindsey"). *See* Order (ECF No. 84). The Court identified the following claims against these three defendants. Plaintiff alleged that Dr. Gerlach: obstructed or prevented recommended cornea surgery and failed to provide plaintiff with appropriate contact lenses in 2012; and failed to prescribe him a cane

1

sometime prior to 2016. *Id*. at PageID.702. Plaintiff alleged that Dr. Doyle: failed to prescribe him in cane in February, March and April 2016; failed to provide plaintiff with appropriate contact lenses in 2010, 2013 and 2015, which caused the swelling of his cornea; and failed to provide plaintiff with prescription sunglasses from March 2015 through sometime in 2016. *Id*. at PageID.702-703. Finally, plaintiff alleged that Dr. Linsley: failed to provide plaintiff with appropriate contact lenses in 2010, 2013 and 2015, which caused the swelling of his cornea; and, told plaintiff on July 13, 2016 that he would be receiving contact lenses, but failed to provide the lenses. *Id*.

The Court granted Dr. Linsley's motion for summary judgment and dismissed plaintiff's claim that Dr. Gerlach failed to prescribe him a cane. *See* Order (ECF No. 121). Now, plaintiff's lawsuit consists of five Eighth Amendment claims: (1) that Dr. Gerlach obstructed or prevented recommended cornea surgery in 2012; (2) that Dr. Gerlach failed to provide plaintiff with appropriate contact lenses in 2012; (3) that Dr. Doyle failed to prescribe plaintiff a cane in February, March and April 2016; (4) that Dr. Doyle failed to provide plaintiff with appropriate contact lenses which caused swelling of his cornea in 2010, 2013 and 2015; and, (5) that Dr. Doyle failed to provide plaintiff with prescription sunglasses from March 2015 through sometime in 2016. Dr. Gerlach and Dr. Doyle have moved for summary judgment on all claims.

### III. Motions for summary judgment

#### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Plaintiff failed to exhaust his claims against Dr. Gerlach

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must

exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

### 3. Discussion

Dr. Gerlach contends that plaintiff failed to exhaust any grievances with respect to the remaining claims in this lawsuit.  The Court agrees. Plaintiff alleged that in 2012, Dr. Gerlach obstructed or prevented recommended cornea surgery and failed to provide plaintiff with appropriate contact lenses.  The doctor points out that plaintiff exhausted seven grievances prior to filing this lawsuit: ICF 2012-07-1217-07D ("1217"); ICF 2014-02-0347-12E ("347"); ICF 2014-02-0302-14Z ("302"); ICF 2013-09-1713-28A ("1713"); ICF 2013-10-1987-12D1 ("1987"); ICF 2013-09-1713-28A ("1713"); and, DRF 2016-05-1156-27A ("1156"). Gerlach Brief (ECF No. 122, PageID.1093); Grievance History Report (ECF No. 39-2, PageID. 190-333).  In his response, plaintiff contends that he exhausted three grievances against Dr. Gerlach, i.e., nos. 1987, 1079, and 1013.  Plaintiff's Response (ECF No. 130, PageID.1459).

#### a. Grievance 1987

In this grievance, plaintiff complained that in October 2013 Dr. Gerlach discontinued his accommodations for barrier-free housing, ramps, contact lenses and supplies. Grievance 1987 at PageID.287.  The grievance was denied, noting that plaintiff was seen by a medical provider (Dr. Gerlach) on October 14, 2013, at which time his special accommodations were discussed and updated to reflect plaintiff's true needs.  *Id*. at PageID.288.  This grievance

addressed the doctor's decision to adjust plaintiff's accommodations in 2013. It did not speak to the allegations against Dr. Gerlach in this lawsuit which allegedly occurred in 2012.

### b.     Grievance 1013

This grievance involved an incident date of May 1, 2014 against "MDOC Health Care Provider Corizon", "John Doe #1-#10", and "Jane Doe #1 -#10." Grievance 1013 at PageID.270. Plaintiff stated that he discussed this grievance with Health Unit Manager Lebarre who "claimed that she contacted Corizon personnel in November 2013 and again in February 2014, and she is now being told by Corizon personnel that Grievant's special contact lenses will not be purchased due to cost." *Id*. This grievance was rejected as duplicative of a previously-filed grievance directed against Lebarre from February 14, 2014, when she allegedly interfered with an on-site optometrist ("Khoelo") to deprive plaintiff of PROSE (Prosthetic Replacement of the Ocular Surface Ecosystem) contact lenses. Grievance 347 at PageID.271, 276. Neither of these grievances named Dr. Gerlach or addressed his actions in 2012.

### c.     Grievance 1079

This grievance included an incident date of May 9, 2014, and was directed against Dr. Gerlach and 28 others because they engaged in cruel and unusual punishment. Specifically, plaintiff stated that he was "a legally blind prisoner" and that the respondents were not accommodating his handicap, because: (1) they required plaintiff to shower with other prisoners in a communal shower without handicap rails; (2) they made plaintiff be led about throughout the facility by strange prisoners who were neither properly trained nor screened to assist him; and (3) the employees at ICF were not properly trained to deal with plaintiff's hardships and "ignorantly accuse[d] Grievant of exaggerating his blindness." Grievance 1079 at PageID.264-265. Plaintiff stated that he would seek injunctive relief unless they provided him the following relief: (1)

6

immediately renovate ICF to meet the standards of the Americans with Disabilities Act and the Rehabilitation Act; (2) immediately train and screen prisoner aids to assist plaintiff; (3) immediately train ICF employees to professionally meet plaintiff's needs; (4) immediately provide plaintiff with braille classes; (5) immediately provide counselling to plaintiff to help him better cope with his difficulties; or (6) immediately transfer plaintiff to a facility that can meet his needs. *Id.* at PageID.265. The grievance was rejected because it contained multiple unrelated issues. *Id.* at PageID.263. Nothing in grievance 1079 addressed Dr. Gerlach's actions alleged in this lawsuit.

### d.      Summary

There is no evidence that plaintiff filed a grievance against Dr. Gerlach with respect to the claims at issue in this lawsuit. Plaintiff has failed to properly exhaust his claims alleged against Dr. Gerlach in this lawsuit. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Dr. Gerlach is entitled to summary judgment on these claims.

### C.      Eighth Amendment claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97

(l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 1. Dr. Gerlach

As discussed, plaintiff failed to exhaust any grievances against Dr. Gerlach for the claims which allegedly occurred in 2012. However, given plaintiff's reference to grievance no. 1987, he now appears to base his claims on Dr. Gerlach's actions taken after the October 14, 2013 examination referenced in that grievance. Assuming that this is the case, the doctor is entitled to

summary judgment on the Eighth Amendment claims that he obstructed or prevented recommended cornea surgery and failed to provide plaintiff with appropriate contact lenses.

Dr. Gerlach had only one appointment with plaintiff regarding the eye problems (keratoconus, cataracts, photophobia, or glaucoma) which took place on October 14, 2013. Medical Record (MR) (ECF No. 124-1, at PageID.1148-1151. At that time, Dr. Gerlach performed a test with a halogen light to determine the validity of plaintiff's claim that he was 100% blind in the left eye. Id. at PageID.1148. Plaintiff failed this test. Id. When the doctor challenged his statement of being "completely blind," plaintiff modified his claim, stating that "maybe I can see light sometimes." Id. Dr. Gerlach's determination is consistent with other medical evidence. Defendant Dr. Doyle stated in his affidavit that "[c]ontrary to the allegations in plaintiff's Complaint and other submissions, he is not blind," but rather he "is visually impaired." Doyle Aff. (ECF No. 128-1, PageID.1401).[1]

Dr. Gerlach noted that plaintiff's corneas were clear "even though [plaintiff] insisted [I] should be able to see 'scar tissue' on them." MR at PageID.1148. The doctor noted that plaintiff gave a "convoluted litany of his eye problem" which included a history of seeing different specialists, various treatment modalities including contact lenses, and a "'corneal transplant' being 'turned down'." Id. The doctor was concerned with plaintiff's "blatant false" history about his left eye being blind 100%." Id. In addition, the doctor noted that plaintiff had a prescription for contact lens solution for hard contact lenses but had no contact lenses, so he discontinued the prescription for the solution. Id. at PageID.1148-1149. The doctor also noted

---

[1] In this regard, one optometrist, Dr. Kolk, advised MDOC officials that someone forged his signature on a disability form in which plaintiff asked "for assistance for Braille and Talking Books, etc.". MR (ECF No. 128-5, PageID.1451). Prisoner Michael Anderson stated that he placed the optometrist's signature on plaintiff's form because he "misunderstood the application." See Anderson Decl. (ECF No. 137-1, PageID.1605). Anderson also filed a statement with respect to plaintiff's claims against Dr. Doyle. See discussion, infra.

that "undoubtedly [plaintiff] will not agree to abide by this guideline and [I] expect grievances which is fine and his right." *Id*.

The doctor took no further action with plaintiff's eye problems, because plaintiff was "well into the optometry/opthalmology system" at the MDOC. *Id*. at PageID.1148. Plaintiff also had "vague nonspecific pains" which included headache or head pain which plaintiff claimed was "due to 'optic nerve' issues." *Id*. Dr. Gerlach referred plaintiff "back to opto" for this matter. *Id*. Dr. Gerlach properly referred plaintiff's eye care to the "optometry/ophthalmology system" under MDOC Policy Directive 04.06.165. This policy directive states in pertinent part that only an ophthalmologist or optometrist can issue contact lenses to a prisoner.[2]

Finally, Dr. Gerlach made no recommendation for or against corrective surgery. In his affidavit, Dr. Gerlach stated that "[i]f Mr. Brown required any corrective or reconstructive surgery for his eye conditions, Mr. Brown's BHCS [Bureau of Health Care Services] eye care practitioners would need to make the referral." Dr. Gerlach Aff. (ECF No. 122-1, PageID.1104).

In his response, plaintiff refers to himself as visually impaired, and asserts that Dr. Gerlach discontinued his "visually impaired inmate permanent medical accommodations" which apparently included ramps, elevators, barrier free housing and "talking watch." Response (ECF No. 130, PageID.1461). Plaintiff also contests the matters addressed during his October 2013 examination by Dr. Gerlach. *Id*. at PageID.1462-1466.

Based on this record, there is no evidence that Dr. Gerlach was deliberately indifferent to plaintiff's serious medical needs by obstructing or preventing cornea surgery or by

---

[2] MDOC Policy Directive 04.06.165 ¶ A defines an "Eye Care Practitioner" as "[a]n ophthalmologist or optometrist licensed by the State of Michigan." *See* ECF No. 122-3, PageID.1107. The policy directive further provides in ¶ O that "Contact lenses shall be issued to a prisoner only by a BHCS eye care practitioner for a medical condition requiring contact lenses, as determined by the Chief Medical Officer, BHCS. The specific medical condition requiring the issuance of contact lenses, including diagnosis, shall be documented in the prisoner's health record." *Id*. at PageID.1108.

failing to provide plaintiff with appropriate contact lenses. As discussed, Dr. Gerlach did not treat plaintiff in 2012 as alleged in the complaint. Assuming that plaintiff's claims arise from Dr. Gerlach's October 14, 2013 examination, the medical records reflect that the doctor examined plaintiff and then referred him to the optometry/ophthalmology system for treatment of his vision problems and headaches. Dr. Gerlach did not violate plaintiff's Eighth Amendment rights by referring him to specialists for treatment. Accordingly, Dr. Gerlach's motion for summary judgment should be granted.

### 2. Dr. Doyle

Dr. Doyle has moved for summary judgment on the merits of plaintiff's Eighth Amendment claims.[3]

#### a. Withdrawn claims

In his response, plaintiff stated that he never asserted a claim for any medical care from Dr. Doyle prior to October 2015. Plaintiff's Response (ECF No. 137, PageID.1574) ("Plaintiff was first seen by optometrist Thomas Doyle on 10-16-15 . . . Plaintiff never stated that Dr. Doyle provided plaintiff any treatment between 2010 – 2014."). Based on this representation, plaintiff has withdrawn any claims alleged against Dr. Doyle which occurred prior to October 2015.

#### b. Failure to prescribe a cane

In his supporting affidavit, Dr. Doyle stated that he reviewed plaintiff's medical record at ICF, that there is no record that plaintiff asked him to prescribe a cane, and that he has never been personally involved in decisions to provide a cane or escort for plaintiff. Dr. Doyle

---

[3] While Dr. Doyle sought summary judgment under an arguable Fourteenth Amendment equal protection claim, the Court has construed all plaintiff's claims against the doctor as alleging deliberate indifference in violation of the Eighth Amendment.

Aff. (ECF No. 134-1, 1567-1568). Plaintiff did not identify any medical record to support his claim that he requested a cane from Dr. Doyle. Plaintiff attempts to rebut Dr. Doyle's affidavit with a "declaration of fact" from inmate Michael Anderson (ECF No. 137-1, PageID.1596-1605). However, this document is neither an affidavit nor a declaration. While the document recites, "I Michael Anderson #533543 first being duly sworn depose as follows," this is recitation is false, because Anderson did not make the statement under oath. Anderson Decl. at PageID.1596. In addition, Anderson's statement is not an unsworn declaration under penalty of perjury because he did not declare, certify, verify, or state "under penalty of perjury that the foregoing is true and correct". 28 U.S.C. § 1746(2). Rather, Anderson diluted this language stating that his statements are "true and correct to the best of my knowledge, information and belief" and that "Under penalty of perjury I Micheal [sic] Anderson swear that the closed [sic] contents are true to the best of my knowledge and belief." Anderson Decl. at PageID.1605. Furthermore, "statements made on belief or on information and belief, cannot be utilized on a summary-judgment motion." *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) (internal quotation marks omitted).

Moreover, none of Anderson's statements rebut Dr. Doyle's affidavit. Anderson has no personal knowledge of any conversations between plaintiff and Dr. Doyle regarding a cane. Rather, Anderson stated that he was present on four occasions in September and October 2015 when plaintiff informed DRF staff (Kolk, Stevens, Lambert and Holmes) "that he was a qualified individual with a disability and therefore requested a walking cane" and that he heard plaintiff inform staff "that it is difficult for him to hold onto other prisoner['s] shoulders and keep up with their pace." Anderson Decl. at PageID.1601-1602). Accordingly, the doctor should be granted summary judgment on plaintiff's Eighth Amendment claim that he failed to prescribe plaintiff a cane.

### c. Failure to prescribe the PROSE prosthetic device

Plaintiff contends that Dr. Doyle violated his Eighth Amendment rights by failing to prescribe PROSE contact lenses. Plaintiff's contention is without merit. As an initial matter, an optometrist cannot simply order the PROSE prosthetic device and give it to patient. The PROSE device is specially manufactured and fitted:

> The PROSE prosthetic device creates a unique liquid bandage that immerses the cornea in a pool of artificial tears and which prevents corneal dessication as well as nurturing, healing and mitigating pain and photophobia. Because it avoids all contact with the cornea, this device is not a contact lens. The fitting process is skill-intensive and time consuming requiring many hours of chair time over a minimum of 5-7 days and the fabrication of an average of 3.5 devices per eye by the Boston Foundation for Sight.

Letter (University of Michigan Kellogg Eye Center) (Dec. 13, 2013) (ECF No. 132-1, PageID.1503).

Dr. Doyle referred plaintiff to the University of Michigan to evaluate fitting plaintiff with the PROSE device in 2013. Dr. Doyle recounts the events and supporting medical records in his affidavit as follows:

> 7. As a physician contracted by the Michigan Department of Corrections to provide optometry care to prisoners under its jurisdiction, my responsibilities include evaluation and treatment that I can provide while with the patient, as well as making recommendations for other treatment modalities or equipment that might be appropriate to the patient based on the given encounter.
>
> 8. I have no authority to approve any recommendations or the expenditure of funds for various modalities of treatment or equipment that I might recommend to the Michigan Department of Corrections.
>
> 9. I have no authority beyond making recommendations and providing information to the patient and the Michigan Department of Corrections. If any recommendation I may make to the Department of Corrections is not approved, I have no personal means by which to "appeal" that decision as the physician.

\* \* \*

> 16. In 2013, I referred Mr. Brown to the University of Michigan Kellogg Eye Center, Department of Ophthalmology and Visual Sciences for evaluation for a PROSE prosthetic device, considered to be the most highly sophisticated contact lenses available to treat Mr. Brown's condition. **(Exhibit H)**
>
> 17. Although Mr. Brown underwent the evaluation at the University of Michigan and detailed information was provided to the Michigan Department of Corrections **(Id.)**, it is ultimately up to the Michigan Department of Corrections to decide what contact lenses or other prosthetic devices, if any, will be provided to Mr. Brown.
>
> 18. According to the medical records, David Brown was dispensed contact lenses on 08/13/15 **(Exhibit I)**. The record further reflects that 'Patient has a long HX [history] of damaging CL [contact lenses] and solar shields purposely. This is the last set of lenses to be ordered for the patient." **Id.**
>
> 19. Despite that note by another optometrist, on 10/15/15, I recommended that Mr. Brown be seen at the Dwayne Walters Medical Facility at Jackson State Prison for evaluation for soft contact lenses.  **Id.** As of 11/09/15, Mr. Brown had specialty contact lenses and I noted that "Much effort has been given to make these contacts work and he [Brown] has not given them adequate time to settle in."  **Id.**

Dr. Doyle Aff. at PageID.1565-1567 (emphasis in original).

"Exhibit H" cited in the affidavit refers to the December 13, 2013 correspondence from the University of Michigan Kellogg Eye Center (ECF No. 132-1, PageID.1503). Dr. Doyle was not deliberately indifferent to plaintiff's serious medical needs for failing to provide him with a PROSE prosthetic device. On the contrary, Dr. Doyle is the eye practitioner who referred plaintiff to the Kellogg Eye Center University for evaluation of his suitability for the PROSE prosthetic device and took no part in the MDOC's decision to approve or disapprove plaintiff's suitability for the device.  Accordingly, Dr. Doyle is entitled to summary judgment on this claim.

        **d.**     **Failure to provide prescription sunglasses**

Finally, plaintiff contends that Dr. Doyle failed to provide him with prescription sunglasses.  In his affidavit, Dr. Doyle explained that plaintiff cannot receive prescription sunglasses and that the doctor offered on multiple occasions to provide him with alternative protection in the form of "solar shields":

14

> 11. With reference to the allegation that I failed to provide David Brown with prescription sunglasses in 2015 and 2016, upon information and belief the Michigan Department of Corrections does not allow prisoners to have prescription sunglasses. Sunglasses are prohibited by the Department of Corrections internal rules and regulations.
>
> 12. I have recommended that Mr. Brown to receive "solar shields," which are not prohibited by the Michigan Department of Corrections. As reflected in **Exhibit D**, a portion of the medical records of the Ionia Correctional Facility, I did recommend that David Brown be provided with solar shields in both 2015 and 2016.
>
> 13. On March 18, 2016, the medical records reflect that the solar shields were approved and Mr. Brown was notified to receive them. He refused and never took the solar shields recommended by me **(Exhibit F)**. I have a recollection, supported by the medical records, that Mr. Brown refused the solar shields in March of 2016 because his family purchased him a pair of sunglasses that he wanted to wear. **Id**.
>
> 14. After the patient was told he could not wear the sunglasses purchased by his family I again recommended solar shields **(Exhibit F)**.

Dr. Doyle Aff. at PageID.1566 (emphasis in original).

Plaintiff's medical records reflect that Dr. Doyle recommended a special accommodation to provide plaintiff with solar shields on six occasions (December 7, 2015; February 12, 2016; March 8, 2016; March 10, 2016; March 11, 2016; and March 15, 2016). MR (ECF No. 127-3, PageID.1383-1390).[4] Plaintiff did not pick up his solar shields and explicitly refused a request to accept the solar shields on March 18, 2016. MR (ECF No. 127-4, PageID.1391).

On March 21, 2016, RN Todd W. Lambert advised plaintiff that the prescription sunglasses which plaintiff purchased outside of the MDOC could not be issued to him because the sunglasses did not comply with MDOC policies (i.e., the frame was not approved, the lenses were tinted, and the frames came with several pairs of tinted lenses). *Id.* at PageID.1392. Shortly thereafter, on March 23, 2016, plaintiff complained that the healthcare department was damaging

---

[4] The Court notes that Dr. Doyle offered plaintiff solar shields before and after plaintiff filed this action on March 4, 2016.

15

his eyes by not giving him his sunglasses. MR (ECF No. 127-5, PageID.1395). In a kite response dated April 19, 2016, RN Lambert advised plaintiff: that prescription sunglasses had not been approved; that while "[s]olar shields (to be worn over regular prescription glasses are what has been approved) . . . you have declined this in the recent past"; and that "[s]olar shields would greatly help reduce photophobia." *Id*. at PageID.1396.

In his response, plaintiff included two declarations from prisoner Dominic Sanford (ECF No. 137-1, PageID.1632, 1636) and two declarations from prisoner William Reid (ECF No. 137-1, PageID.1633-1635, 1638-1640), stating that they were allowed to have tinted lenses. These declarations do not comply with the requirements of 28 U.S.C. § 1746. The declarations do not simply state that the statements made are "true and correct" as required by the statute. Rather, these declarations include the qualification that they are "true *to the best of my knowledge*." *See* 28 U.S.C. § 1746(2). *See, e.g., Huff v. UGI Corp.*, No. 1:06 CV 180, 2006 WL 2385286 at *1 (N.D. Ind. Aug. 16, 2006) (using the formulation "to the best of my knowledge" is insufficient to meet the requirements of an unsworn declaration under 28 U.S.C. § 1746).

Furthermore, the substance of these statements does not support plaintiff's claim. The fact that other prisoners have medical conditions that require tinted lenses does not mean that plaintiff is entitled to, tinted lenses. In this regard, plaintiff presented a copy of an "Eye Care" attachment to the "Michigan Department of Corrections Bureau of Health Care Services Medical Services Advisory Committee – Guidelines" (both dated 10/23/13) which states in part:

> Tinted lenses are only supplied when medically indicated. This would include such conditions as aniridia, photosensitizing medication regiment, albinism, etc. Subjective photophobia is not considered a medical indication for tinted lenses.

Eye Care Attachment (ECF No. 137-1, PageID.1594). Assuming that this guideline is relevant, plaintiff has provided no evidence that that tinted lenses are medically indicated for his condition.

On the contrary, RN Lambert referred to plaintiff's condition as "photophobia," which is not considered a medical indication for tinted lenses under the cited guideline.

It is undisputed that Dr. Doyle treated plaintiff's photophobia by prescribing him solar shields to protect his eyes and that plaintiff refused to use the shields because he wanted to wear sunglasses. Dr. Doyle did not violate plaintiff's Eighth Amendment rights by using this mode of treatment. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted). Furthermore, plaintiff's desire to wear sunglasses rather than the prescribed sun shields does not form the basis for an Eighth Amendment claim. A patient's disagreement with his physician over the proper medical treatment for his condition is not cognizable as a federal constitutional claim. *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003). Accordingly, Dr. Doyle's motion for summary judgment should be granted.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that Dr. Gerlach's motion for summary judgment (ECF No. 122) be **GRANTED**, that Dr. Doyle's motion for summary judgment (ECF No. 127) be **GRANTED**, and that this action be **TERMINATED**.

Dated: March 4, 2019       /s/ Ray Kent
                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).